MARY R. HAMMOND *vs.* AMERICAN MUTUAL LIFE INSURANCE COMPANY.

Under a policy of life insurance, to " terminate in case the premium charged shall not be paid in advance on or before the day at noon on which the same shall become due and payable," if the day of payment falls on Sunday, the premium is not payable until Monday, even if the assured dies on Sunday afternoon.

ACTION OF CONTRACT upon a policy of insurance, insuring the life of John Hammond, in consideration of a premium " to be paid annually in advance, during the term of this policy, or half or quarter yearly in advance, with interest on each portion deferred ;" and payable to the plaintiff " within ninety days after

proof of the death of the said John Hammond, provided this policy is then in force." The policy upon its face declared that " in case the premium charged hereon shall not be paid annually in advance, or half or quarter yearly in advance, on or before the day, at noon, on which the same shall become due and pay-- able," it should " cease and terminate, and neither the whole nor any part of the sum herein agreed to be paid shall be due or payable;" and that the policy was " granted and accepted in reference to all the conditions herein contained," and others annexed. The " conditions of insurance " annexed to the policy, provided that " policies are null and void during the nonpayment of any premium due ; but the company will, at their discretion, receive a payment after due, and continue the policy, if satisfied that the party remains in perfect health."

Upon the back of the policy were these words: " Premiums payable 1st January ; or 1st January and 1st July ; or 1st January, 1st April, 1st July and 1st October, at noon."

The parties submitted the case to the decision of the court upon the policy and the following facts : John Hammond paid the premiums quarter yearly, as provided by the policy, and was taken sick on the 24th of September, and afterwards confined to his house, but not thought to be past recovery until the morning of Sunday, October 1st 1854, and on that day, between the hours of two and four in the afternoon, died, without having paid the premium for the quarter which began on that day. The defendants' office was not open on Sunday, and no one was there to receive the premium, but this was not known to the plaintiff, and no attempt was made to pay it until Monday, October 2d, in the forenoon, when it was tendered and refused. The death of the assured was notified by the plaintiff to the defendants on the 18th of December 1854.

*L. Mason*, for the plaintiff, cited *Stebbins* v. *Leowolf*, 3 Cush. 137 ; *Thayer* v. *Felt*, 4 Pick. 356 ; *Avery* v. *Stewart*, 2 Conn. 69 ; *Sands* v. *Lyon*, 18 Conn. 18; *Delamater* v. *Miller*, 1 Cow. 75 ; *Salter* v. *Burt*, 20 Wend. 205 ; *Link* v. *Clemmens*, 7 Blackf. 479 ; *Barrett* v. *Allen*, 10 Ohio, 426 ; 1 Kent Com. (6th ed.) 131 ; Rev. Sts. *c.* 50, § 1 ; *Buckbee* v. *United States Insurance, Annuity*

*&* *Trust Co.* 18 Barb. 541 ; *Hammond* v. *American Mutual Life Ins. Co.* 20 Law Reporter, 273.

*H. A. Scudder*, for the defendants. This policy may be regarded as an insurance from quarter to quarter, so long as the premium thereon was paid " quarteryearly in advance," and therefore as having expired on the 1st of October 1854 at noon, before the death of the assured. *Turlton* v. *Staniforth*, 5 T. R. 695. *Want* v. *Blunt*, 12 East, 183. *Mutual Benefit Life Ins. Co.* v. *Ruse*, 8 Georgia, 534.

If not, then it must be construed as a conditional agreement of the defendants to pay the sum named " within ninety days after proof of the death of the " assured, " provided this policy is then in force." And

(1.) The conditions of the policy had not been complied with on the part of the assured at the time of his death. The premium was not paid or tendered " in advance," or " on or before the day at noon on which it became due," or " during the term of the policy," that is, the life of the assured ; and the assured died after the premium " became due," and " during the non-payment " thereof. Consequently the policy was not then " in force," but had become by its own terms " null and void." Cases above cited. *Vose* v. *Eagle Life Ins. Co.* 6 Cush. 42. *Hathaway* v. *Trenton Mutual Life Ins. Co.* 11 Cush. 448.

(2.) The tender subsequently made on Monday cannot operate *nunc pro tunc* as a compliance with the conditions of the policy. If available at all, it must be upon the ground that when the day of performance of contracts falls on Sunday, compliance with the stipulations of the contract on the next day is deemed in law a performance. *Salter* v. *Burt*, 20 Wend. 205. But that rule only applies to one class of contracts, and even there seems of questionable authority. *Avery* v. *Stewart*, 2 Conn. 69. *Kilgour* v. *Miles*, 6 Gill & Johns. 268.

No such rule can apply to this case. The assured being dead, there was no person in existence legally authorized to tender a compliance with the requirements of such a rule, and no contract of the assured to which such rule could be applied. The assured never contracted to pay the successive premiums.

Compliance with the terms of the policy in this respect was en-
tirely optional on his part. The act to be performed by him
was in the nature of a condition precedent, and as such must
be strictly construed, and the defendants' liability made to de-
pend upon previous compliance with that condition.

No necessity existed for an application of the rule, as the
premium might have been paid before as well as on the day it
became due. And to allow its application would be to enable
the assured, by his own negligence, to cast upon the defendants
the burden and risk of insuring his life for an additional day
without any adequate consideration ; inasmuch as the payment
of the premium at the expiration of such additional day would
be left to depend upon the will, or at least upon the ability,
of the assured, in violation of the express terms and conditions
of the policy.

DEWEY, J. There can be no doubt as to the character of this
contract, and that the policy would be forfeited and avoided by
the neglect of the assured to pay the premium chargeable
thereon at any quarter day when the same became due and
payable. The policy was granted by the one party and ac-
cepted by the other with a recital therein that the same was to
be taken " in reference to all the conditions herein contained."
Among those conditions it is provided that " in case the pre-
mium charged hereon shall not be paid annually in advance, or
half or quarter yearly in advance, on or before the day, at noon,
on which the same shall become due and payable," then the
same shall " cease and terminate, and neither the whole nor any
part of the sum agreed to be paid shall be due or payable."

The whole inquiry is reduced to this point, when was the quar-
ter yearly payment for the quarter succeeding that commencing
on the 1st of July 1854 due, and by law required to be paid ?
Adopting the proper division of the year into four quarters, and
commencing on the 1st of April 1854, the third quarter would
commence on the 1st of October, and the premium to be paid
for that quarter, irrespectively of the circumstance that the first
day of October occurred on Sunday, would be required to be
paid on that day. The assured had however until the 1st of

October at noon to pay the premium. He was not in default before that time, unless it be that in case the 1st of October occurring on Sunday, he was required to pay the premium on the Saturday preceding. The only question in the case seems to be whether.Sunday is to be excluded as a day of payment, and the payment properly postponed till Monday, or whether the party, to save his policy from being forfeited, must make his quarterly payment on or before Saturday, when the quarter day falls on Sunday.

We have on the one hand the rule as to commercial paper, or negotiable notes payable with grace, requiring payment to be made on Saturday where the third day of grace falls on Sunday ; and on the other a rule, generally adopted as to other contracts to pay money or perform other specific duties on a certain day named, that if such day falls on Sunday the day of performance is postponed till Monday. *Salter* v. *Burt*, 20 Wend. 205.

In reference to notes payable on a certain day, but entitled to three days' grace, it is said that in such case the note by its terms would be due and payable two days earlier than Saturday, and that what was originally a mere indulgence to casualty or oversight should not be extended, and therefore if the last of three days of grace falls on Sunday, the payment must be made on Saturday, and that it was more reasonable to take from than to add to a period of time thus originally allowed as mere grace and favor. But as to other contracts, which by the face of the instrument required a payment on a day which proves to be Sunday, to discharge literally the promise or duty, the law seems to sanction the postponement of the time for doing the same till the Monday following. In other words, Sunday is not a legal day for the performance of contracts and doing secular business. The statute law forbids all such acts. The party paying and the party receiving money on that day in discharge of a contract would subject themselves to a penalty for so doing. Sunday was not a day contemplated by the parties as embraced in the stipulation to pay a quarterly·premium on the first day of˙ October in each and every year during the life of the party assured. The defendants had no office open

on that day, and were under no obligation to receive the pay-ment of the premium on that day, if the same had been tendered by the assured. Such being the case, the assured was under no obligation to do what would have been not only an illegal act, but also one which the other party was not bound to recognize. In this view of the case there was no such default on the part of the assured, in not paying the premium fully due on the 1st of October, as should be held to terminate the policy.

It is urged on the part of the defendants that this was not an ordinary contract to be performed on a day certain, and that the assured was under no legal obligation to pay subsequent pre-miums after the expiration of a quarter of a year; but such payment was a voluntary act, to be done or not done at his election; and therefore that the rule of law applied to a contract binding a party to do some act at some future named period, which proved to be Sunday, has no proper application here. But we think the rule as to the time of making the payment is the same in both cases. It was the purpose of the assured to obtain a policy to continue during his life. Such policy was issued to him, but upon condition that he should make his quarter yearly payments regularly in advance. It was obliga-tory on him to pay, if he would continue the policy in force. The day of payment was on this occasion the first day of October. That day, as it appears, fell on Sunday; and this being so, he was entitled to the ordinary privilege of discharging his obligation on the Monday following. The quarter yearly payment, it is true, in terms became payable on Sunday noon; but that day was not a day for secular business, and therefore, legally speaking, Sunday was not the day " at which the same became payable; " and so, by the very provisions of the policy, properly construed, the quarterly premium was seasonably ten-dered on Monday. *Judgment for the plaintiff.*